### JIM SIMPSON v. STATE.

No. A-2879.  Opinion Filed June 29, 1918.

(173 Pac. 529.)

INTOXICATING LIQUORS—Act of Employee—Scope of Employment—Conviction of Employer. Where the attempt is made to convict a person and to hold him criminally responsible for the acts of his employee, it must be clearly shown that such act was reasonably within the scope of the agent's employment, or was an act done within the course of the principal's business. One employed to do the ordinary work in and around a feed and wagon yard is not ordinarily employed, nor is it within the scope of the employer's business, to sell whisky in such yard, and the employer of such person would not be criminally responsible for the acts of such employee in selling whisky in said yard, unless he was then engaged in such unlawful business at that place, or had hired such employee to sell whisky in addition to his general duties as helper in the feed and wagon yard.

*Appeal from County Court, Ellis County;*

*S. A. Miller, Judge.*

Jim Simpson was convicted of selling intoxicating liquor, and assessed a fine of $50 and 30 days in prison, and he appeals. Reversed.

*C. B. Leedy,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *R. McMillan,* Asst. Atty. Gen., for the State.

MATSON, J.  Jim Simpson was convicted in the county court of Ellis county for selling a quart of diluted alcohol to one James Bedey, and his punishment fixed at a fine of $50 and imprisonment in the county jail for a period of 30 days.

The conviction was based largely on the testimony of Albert Rich, who swore that he was an employee of Simpson's in his feed and wagon yard in the town of Arnett; that he was 18 years old, and was employed just as a helper around the feed yard.  His testimony was to the effect that on the 14th day of December, 1916, Jim Bedey came over there and wanted to buy some whisky, and Simpson told him that he had a little alcohol, and Bedey said he would like to have a drink, and then Simpson told Rich to go and get some, and Rich hunted up the alcohol out in a camp house and mixed up a quart and brought it in to where Simpson and Bedey were, and that Bedey gave Simpson a $5 bill and Simpson returned $3 in change, charging $2 for the alcohol.  Rich was corroborated by his brother-in-law, S. J. Unziger.

Bedey testified that he got a quart of alcohol there on that occasion, but that he bought it from Rich, and, while Simpson was present in the office at the time, he was drunk, and did not say anything to Rich about getting alcohol; that Rich got the alcohol and delivered it to Bedey, and was paid for it without any express direction from Simpson so to do.

There was evidence to show that Simpson and some other parties had received a shipment consisting of one gallon of whisky and two gallons of alcohol at the town of Gage in that county a day or two before this alleged sale, but the witnesses testified that the part of this ship-

ment that belonged to Simpson was one gallon of whisky, and that a gallon of alcohol belonged, respectively, to C. G. Cooley and one Mercer, and that each of them took his part to his home.

According to the testimony of the state's witnesses, the defendant, Simpson, would be guilty on the ground that he owned the alcohol that was sold by Rich, and had ordered and directed Rich to get it and make the sale, all of which was done in Simpson's presence and with his knowledge and consent. On the other hand, it is the contention of the defendant that if any sale of alcohol was made by Rich, it was at a time when defendant was drunk, and did not know about it; that it was without his knowledge or consent, and that he at no time had any interest in any alcohol, if any such liquor was concealed about his premises; that if Rich made such a sale, he did it entirely upon his own responsibility.

In instructing the jury on the question of Simpson's responsibility for Rich's acts, the court gave the following instruction:

"You are further instructed that if you believe from the evidence beyond a reasonable doubt in this case that in making the sale of the said liquor, if any sale was made, that the witness Rich was in the employ of the defendant, or was acting in the capacity of a servant or employee, of the said Simpson, and that the liquor was the sole property of the defendant, Simpson, and that the witness, Rich, acting in such capacity, sold the liquor charged in the information, with full knowledge and consent of the defendant, Simpson, then, and in that event, the defendant would be guilty of a sale of intoxicating liquor, and it will be your duty to convict him and assess his punishment as set out in paragraph No. 2."

It appears that after the instructions were given, the jury retired to consider their verdict, and were unable to reach a conclusion without additional instruction. We quote from the record the following recital:

"That thereupon the cause was argued by both attorneys for the state and for the defendant, and the jury retired to their jury room in charge of a sworn bailiff to consider the case, and before arriving at a verdict returned into court for additional instructions, and the following additional instructions were by the court given."

Thereafter, the following proceedings were had, and the court gave the following instructions:

"By the Court: Is it agreeable with counsel that I orally instruct the jury on that point?

"By Mr. Leedy: It is with us, subject to our exceptions.

"The court will instruct you further that if this man, Rich, was working for the defendant, that whether he employed him or·not, or whether he paid him or not, if he accepted his services and acted as his agent there around the feed yard, that he was bound by his acts, and if he sold any liquor there, while he was working there for Simpson, no matter whether he was getting any consideration for his working or not, he was his agent, and the defendant was bound by his acts."

Upon oral argument it was earnestly contended by counsel for plaintiff in error that the additional instruction given was seriously prejudicial. With this contention we are inclined to agree. Instruction No. 7 was perhaps permissible under the evidence in the case, although not supported by the evidence introduced by the state, but the additional instruction given after the jury had retired and failed to reach a verdict was certainly prejudicial, and does not properly state the law under any circumstances.

The testimony shows that Rich was only employed as a helper about the feed and wagon yard. The ordinary duties of a helper in a feed and wagon yard are well known to the public generally. It certainly cannot be contended that Rich was employed by Simpson to sell liquor under such an employment. The sale of liquor is not one of the ordinary duties devolving upon a helper in a feed yard—no more so than would the currying and feeding of horses be the ordinary duties of a barkeeper. Where it is attempted to convict a principal and bind him criminally for the acts of his agent, this court has heretofore established the rule in *Stack et al. v. State*, 4 Okla. Cr. 1, 109 Pac. 126. In that case Stack was convicted, and the conviction was sustained where the sale was made by Stermer, but the conviction was sustained because Stack was running a place for the sale of liquor and had employed Stermer in that kind of business, and it was there held that Stack was responsible for Stermer's act, and that Stermer was Stack's agent in the sale of intoxicating liquor because the sale there made was made in the course of Stack's business. The facts in the Stack Case are easily distinguishable from those in the instant case.

Where the attempt is made to convict a person and to hold him criminally responsible for the acts of his agent, it must be clearly shown that the act of the agent was reasonably within the scope of the agent's employment, or was an act done within the course of the principal's business. The additional instruction given nowhere limits the jury to a consideration of such facts, but says that the defendant would be responsible for his agent's acts if he sold any liquor, although not employed for that purpose, nor getting any consideration for it whatever, although he was only acting as his agent in and

around the feed yard. This permitted the jury to convict the defendant for Rich's act just because Rich was working for him in the business of conducting a feed yard, and it is plain that the jury refused to convict defendant before this instruction was given, although the court already had given instruction No. 7, which is heretofore set out, and which required the jury to limit Simpson's responsibility for the sale made by Rich when they found beyond a reasonable doubt that the liquor sold by Rich was the sole property of Simpson, and the sale was made with the full knowledge and consent of Simpson. It would be a miscarriage of justice to permit this conviction to stand when it clearly appears that the additional instruction given was the moving cause therefor.

The judgment of conviction is reversed, and the cause remanded to the county court of Ellis county for further proceedings in accordance herewith.

DOYLE, P. J., and ARMSTRONG, J., concur.